IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

DUSTY J.,
    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,
    Defendant.

Case No. 1:23-cv-01189-JEH

**Order**

Now before the Court is the Plaintiff's Brief (Doc. 9) and the Defendant's Brief (Doc. 11).[1] For the reasons stated herein, the Court DENIES the Plaintiff's request to reverse and remand the unfavorable decision of the Defendant, Martin O'Malley, Commissioner of Social Security.[2]

**I**

Dusty J. filed an application for disability insurance benefits (DIB) on June 9, 2019, alleging disability beginning on August 15, 2010. She claimed a back injury with degenerative disc disease and arthritis limited her ability to work, and she stated she stopped working on April 15, 2019 due to her conditions. AR 224. Her DIB claim was denied initially on October 25, 2019 and upon reconsideration on March 27, 2020. Dusty filed a request for hearing concerning her DIB application, which was held on August 25, 2022 before the Honorable David W. Thompson

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 7, 8).
[2] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears at (Doc. 5, 6) on the docket.

1

(ALJ). At the hearing, Dusty was represented by an attorney, and Dusty and a vocational expert (VE) testified. Following the hearing, Dusty's claim was denied on September 19, 2022. Her request for review by the Appeals Council was denied on February 1, 2023, making the ALJ's Decision the final decision of the Commissioner. Dusty, after obtaining an extension of time to do so, timely filed the instant civil action seeking review of the ALJ's Decision on May 15, 2023.

## II

Dusty argues: 1) the ALJ committed reversible error when he failed to consider the impact of Dusty's chronic pain in assessing her work limitations, in violation of Social Security Ruling 96-8p and Social Security Ruling 16-3p; and 2) the ALJ's finding that fibromyalgia is not a medically determinable impairment (MDI) within the meaning of Social Security Ruling 12-2p is not supported by substantial evidence.

## III

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. § 404.1566. The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. § 404.1520. In the following order, the ALJ must evaluate whether the claimant:

1) is performing substantial gainful activity;

2) suffers from an impairment that is severe and meets a durational requirement, or suffers from a combination of impairments that is severe and meets the durational requirement;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4) is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

5) is unable to perform any other work existing in significant numbers in the national economy.

*Id*.  An affirmative answer at Steps Three or Five leads to a finding that the plaintiff is disabled.  *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

The plaintiff has the burdens of production and persuasion on Steps One through Four.  *Id*.  However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment.  *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

In the instant case, Dusty claims error on the ALJ's part at Steps Two and Four.

### A

At Step One, the ALJ determined Dusty did not engage in substantial gainful activity during the period from her alleged onset date, August 15, 2010, through her date last insured, March 31, 2016.  AR 30.  At Step Two, the ALJ determined Dusty had the following severe impairments:  lumbar degenerative disc disease and obesity.  *Id*.  At Step Three, the ALJ determined through the date last insured, Dusty did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  AR 34.  At Step Four, the ALJ made the following residual functional capacity (RFC) finding:

> [T]hrough the date last insured, the claimant had the [RFC] to perform light work as defined in 20 CFR 404.1567(b) except she is limited to occasional climbing of ramps, stairs and ladders; limited to no climbing of ropes and scaffolds; limited to occasional stooping, kneeling, crouching and crawling; and limited to occasional exposure to extreme cold, unprotected heights, and unprotected moving machinery.

AR 35.  The ALJ found through the date last insured, Dusty was capable of performing her past relevant work as a collection clerk because the work did not

require the performance of work-related activities precluded by Dusty's RFC. AR 44. Thus, the ALJ concluded Dusty was not under a disability at any time from August 15, 2010 through March 31, 2016. AR 45.

B

Dusty argues the ALJ erred where he failed to consider the mental limitations arising from Dusty's chronic pain. She says he incorrectly derived a "clear and convincing evidence of intense and disabling pain" standard, and he erred by failing to account for the mental impact of Dusty's chronic pain and medication side effects. The Commissioner argues substantial evidence supported the ALJ's evaluation of Dusty's symptoms. He says the Social Security Act, the regulations, agency policy, and case law belie Dusty's argument that her subjective testimony about her pain is enough to establish disability.

Indeed, 42 U.S.C. § 423(d)(5)(A) provides, in relevant part, "An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings . . . ." 20 C.F.R. § 404.1529 makes an ALJ's obligation to consider objective medical evidence explicit: "In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). SSR 16-3p provides, in turn, that all the evidence, including objective medical evidence, is to be considered in evaluating the intensity, persistence, and limiting effects of an individual's symptoms and also the factors set forth in 20 C.F.R. § 404.1529(c)(3) are to be considered including: the claimant's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; medications and their side effects; non-medication treatments; any other measures used to relieve pain or

5

other symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to pain and other symptoms.  SSR 16-3p, at *7-8.

1

Here, the ALJ first identified the location of Dusty's ailments per Dusty's own statements:  osteoarthritis in both knees and her lower back and rheumatoid arthritis in her hands, knees, and ankles.  AR 36.  Before citing any medical records, the ALJ explained, "The following summary of the medical evidence and subsequent discussion supports [the assessment that Dusty's statements concerning the intensity, persistence, and limiting effects of her symptoms is not entirely consistent with the medical and other evidence in the record]."  *Id*.  From there, the ALJ detailed Dusty's varying complaints between September 2010 and January 2016 of:  low back pain, worsening back pain; pain with lumbar range of motion; "pain everywhere;" pain in the back, wrist, and hand; back and right lower extremity pain; pain in the wrists and ankles; pain in her jaw; pain in the hips and knees, pain in the right foot; and low back pain into both legs.  AR 36-41.

For the noted instances of pain complaints, the ALJ also considered additional complaints of numbness and tingling as well as positive examination findings, including tenderness in the following locations:  the SI joints, the paraspinal/paravertebral region, Achilles, left foot, the MCP joints, the PIP joints, the calf area, the medial aspects of Dusty's knees, the right ankle, and the paravertebral gluteal region.  AR 36, AR 37, AR 38, AR 39, AR 41.  However, the ALJ cited to several medical records which revealed tenderness was *absent* at times Dusty complained and which revealed Dusty's straight leg and other tests were negative.  *See, e.g.*, AR 36, AR 37, AR 38, AR 40, AR 41; *see also Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) ("To determine the credibility of allegations of disabling pain, an ALJ may consider several factors, including objective medical evidence *and any inconsistencies between the allegations and the record*) (emphasis added).

6

Moreover, the ALJ further cited examinations that revealed, simultaneous with Dusty's pain complaints and tenderness, normal reflexes, intact sensation, no atrophy, no swelling, no erythema, full range of motion, no deformity, no evidence of sensory or motor deficits, normal gait, normal mental status, and no coordination deficits. AR 36, AR 37, AR 38, AR 40, AR 41. The ALJ cited several instances where examinations revealed tenderness but "were otherwise normal." AR 38, AR 39, AR 40. The ALJ also pointed out instances when Dusty objectively appeared in no distress while she complained of worsening pain. AR 36, AR 37, AR 41. Further, the ALJ cited: Dusty's report that an injection worked much better than the first one she received (AR 37); Dusty's note in August 2011 that she was going to start watching a friend's baby though just two months earlier she reported "difficulty holding infant long term" (AR 37); Dusty's back pain was better with a chiropractor's treatment (AR 38); and Dusty had been doing well and had tolerated her medications until a bout with the flu (AR 38). The ALJ cited where: Dusty had been exercising (AR 39); Dusty's knee was feeling better after undergoing physical therapy (AR 39); she said a bath helped when she had muscle pain (AR 39); her chronic pain was fairly well controlled as of August 2014 through October 2014 (AR 40); she reported in June 2015 that her pain was controlled with medication (AR 41); she obtained 40% relief from previous injections (AR 41); and a neurosurgeon recommended conservative treatment (AR 42).

The ALJ thereafter condensed his discussion of the record evidence into several conclusions, among others, that a 2014 MRI showed only mild stenosis, post-date last insured imaging confirmed there had been little to no evidence of significant stenosis, the medical records did not clearly demonstrate that Dusty had significantly limited range of motion or difficulty ambulating, no provider indicated the need for further surgery, and although Dusty said some of her injections were unhelpful, she indicated her back pain was fairly well controlled

7

with muscle relaxants and opioid pain medications. AR 42. Plainly, the ALJ did not demand Dusty produce specific objective medical findings to substantiate her pain level. The ALJ instead did as required of him by 20 C.F.R. § 404.1529 and SSR 16-3p where he considered the bulk of the record evidence bearing upon the question of whether Dusty was as limited by pain as she claimed. The Court may not reweigh the evidence, but it certainly may (and does) find that the ALJ committed no legal error in considering Dusty's pain complaints. *See Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) ("We will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it"). Specifically, as the Commissioner argues, there is nothing in the Decision to suggest that the ALJ deviated from the preponderance of evidence standard of review. *See* 20 C.F.R. § 404.901 (defining the preponderance of the evidence standard as "such relevant evidence that as a whole shows that the existence of the fact to be proven is more likely than not"). This Court, in turn, must of course determine whether substantial evidence supports the ALJ's Decision. *See Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001) (explaining the "substantial evidence" standard demands more than a scintilla of evidentiary support but is less demanding than the preponderance of the evidence standard). The ALJ sufficiently explained, with citations to substantial record evidence, why he determined Dusty was not as limited by pain as she claimed. *See Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) ("substantial evidence . . . means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion").

2

Dusty points to her hearing testimony that her medications make her drowsy, that she has to lie down approximately every 15 to 20 minutes for an hour

when performing basic household chores due to aggravated pain from activity, and that she would be prevented from doing a "sit-down job" because she would have to get up and move. AR 66, AR 67, AR 68, AR 72. She also cites to a single treatment note which indicated that chronic pain interfered with her sleep which then made it difficult to function and perform daily activities. Plf Brief (Doc. 9 at pg. 12) (citing AR 1453). She argues the ALJ erred when he made no mention of how the RFC assessment accounted for mental limitations arising from her chronic pain and medication side effects in violation of SSR 96-8p. SSR 96-8p requires an ALJ's RFC assessment to include "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, at *7. A full reading of the ALJ's RFC assessment at Step Four contradicts Dusty's assertion.

As addressed above, the ALJ made no reversible error in his subjective symptom evaluation. That alone undermines Dusty's argument; the ALJ determined Dusty's pain was not as limiting as alleged, thus, any mental limitations allegedly caused by that pain did not warrant inclusion in the RFC. *See Richards v. Berryhill*, 743 F. App'x 26, 30 (7th Cir. 2018) (unpublished opinion) (stating a claimant bears the burden of showing that she has impairments that affect her ability to work and pointing to various diagnoses and complaints is insufficient to establish the existence of a functional limitation) (citing *Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005)). Significantly, the ALJ considered Dusty's daily activities and observed they "indicate that the claimant can perform some work activity." AR 42.

The ALJ cited Dusty's testimony that she was able to perform her own personal care. AR 42. He cited that she was able to drive to watch her children's extra-curricular activities, including traveling out of state. *Id.* He cited Dusty's

ability to care for not only her own children, "but also took on watching a friend's baby." AR 43. The ALJ noted Dusty's hearing testimony that her medications made her drowsy and sometimes made it difficult to stay awake during the day, but Dusty followed up with the statement that she was "drowsy quite a bit during the day. Now, it's more so just at night." AR 35 (citing AR 66-67). The ALJ also noted Dusty's hearing testimony that she alternated between sitting and standing at her child's travel hockey games.[3] AR 36. The ALJ ultimately concluded at Step Four, "The claimant's symptoms have been incorporated into the [RFC] herein. Although the claimant does have impairments that can be anticipated to produce a certain amount of limitations, she has not demonstrated limitations in excess of those accounted for in the [RFC]." AR 44. The Court finds the ALJ built an accurate and logical bridge from his lengthy summary of the overall record evidence to his conclusions as reflected in the RFC finding. *See Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020) (reiterating that an ALJ's decision will be upheld if it uses the correct legal standards, is supported by substantial evidence, and builds an accurate and logical bridge from the evidence to the ALJ's conclusion). One conclusion being that the overall record evidence did not warrant the addition of mental limitations in the RFC finding.

As the Commissioner puts it, the ALJ did not wholly reject Dusty's subjective complaints but instead discounted them in light of the overall record evidence. *See Gedatus*, 994 F.3d at 903 ("the presence of contradictory evidence and arguments does not mean the ALJ's determination is not supported by substantial evidence"). The Seventh Circuit has explained strict conformity with SSR 96-8p is not necessarily fatal because, "Essentially, an ALJ's RFC analysis must say enough

---

[3] While not mentioned in the Decision, Dusty's own attorney at her hearing elicited the following from the VE. As long as the individual performing the identified job of Dusty's past work as collection clerk was within the productivity limits of no more than 15% off task, the individual could change position from seated to standing and standing to seated. AR 81-82.

to enable review of whether the ALJ considered the totality of the claimant's limitations." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022) (internal citations and quotations omitted). Here, even if the Court were to find the ALJ could have more closely complied with SSR 96-8p, the ALJ's RFC analysis certainly said enough such that the Court answers in the affirmative that he considered all of Dusty's limitations.

C

Dusty lastly argues that the ALJ's RFC finding is incomplete because it does not account for any limitations arising from her impairment of fibromyalgia. Dusty says that is because the ALJ, at Step Two, failed to correctly apply SSR 12-2p. SSR 12-2p provides two ways of proving fibromyalgia is a MDI: the 1990 American College of Rheumatology (ACR) Criteria for the Classification of Fibromyalgia and the 2010 ACR Preliminary Diagnostic Criteria. Both require the claimant to show a history of widespread pain in all quadrants of the body that has persisted for at least three months. The first way also requires at least 11 positive tender points on physical examination found bilaterally and both above and below the waist and evidence that other disorders that could cause the symptoms or signs were excluded. SSR 12-2p, at *2-3. The second way requires the claimant to also show: repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems, waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and evidence that other disorders that could cause those repeated manifestations of symptoms, signs, or co-occurring conditions were excluded. SSR 12-2p, at *3. SSR 12-2p also provides that an ALJ cannot rely upon a licensed physician's diagnosis of fibromyalgia alone. *Id.* at *2. Here, Dusty contends the ALJ failed to comply with SSR 12-2p where he considered only the

1990 ACR criteria and did not even properly consider the evidence pursuant to that set of criteria.

At Step Two, the ALJ explained that he considered and applied the provisions of SSR 12-2p in assessing possible fibromyalgia, and he identified the two sets of criteria. AR 33. From there, he focused on trigger point evidence, stating:

> [T]he claimant's medical record refers to fibromyalgia but treatment records do not identify any specific trigger points. At times, the claimant had no diffuse tender points . . . At other times, only diffuse tender points were noted . . . As such, there is insufficient information upon which to find fibromyalgia a medically determinable severe impairment.

*Id*. Quite obviously, the ALJ failed to include any discussion for the Court's review as to his consideration of both sets of criteria, and that was error. *See Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015) (stating that an ALJ "must adequately articulate her analysis so that [a reviewing court] can follow her reasoning").

Among other arguments the Commissioner makes in opposition to Dusty's, the Commissioner contends the ALJ's failure to evaluate whether Dusty's fibromyalgia met the 2010 ACR criteria was harmless. *See Butler v. Kijakazi*, 4 F.4th 498, 504 (7th Cir. 2021) ("the harmless error standard applies to judicial review of administrative decisions, and we will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result") (quoting *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011)). He says that is so where, as here, the ALJ found other impairments severe with similar symptoms and proceeded with the sequential evaluation process. *Castile v. Astrue*, 617 F.3d 923, 927 (7th Cir. 2010); *see also Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012) ("[d]eciding whether impairments are severe at Step 2 is a threshold issue only; an ALJ must continue on to the remaining steps of the evaluation process as long as

there exists even *one* severe impairment" such that any error of omission by the ALJ at Step Two was harmless where he categorized two impairments as severe). Noting the ALJ found Dusty had severe degenerative disc disease and obesity, both of which generated pain similar to her claimed fibromyalgia, the Commissioner further argues Dusty cannot establish error because the ALJ evaluated all of the medical records during the period under consideration when evaluating what Dusty could and could not do in the workplace.

In fact, at Step Two, the ALJ explicitly recognized: "[T]he claimant's diagnosis is unclear, with varying diagnoses by different medical sources addressing overlapping signs and symptoms, which is not surprising given the nature of inflammatory/rheumatoid arthritis, fibromyalgia, and radiculopathy." AR 33. He continued, "Regardless of the diagnostic label applied, the undersigned considered all of the claimant's impairments, including those that are not severe, when assessing the claimant's [RFC]." AR 34. From there, at Step Four, the ALJ considered the record evidence as detailed in III.B above.

The ALJ's explicit consideration of that evidence contradicts Dusty's assertion that the ALJ failed to consider limitations her fibromyalgia caused. True, the ALJ considered the complained of limitations as stemming from her lumbar degenerative disc disease and obesity (rather than fibromyalgia), but the evidence was one and the same. As detailed above, the ALJ juxtaposed Dusty's complaints with normal findings, the ALJ noted examinations simultaneously revealed normal and positive findings, and the ALJ contemplated Dusty's reported daily activities and the efficacy of her medications against other record evidence. He ultimately detailed how and why the evidence did not support the extent of limitation alleged.

An "RFC assessment must incorporate all of the claimant's limitations supported by the medical record[.]" *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir.

2021). Here, it is apparent the ALJ did as was required of him; the relevant authority speaks of limitations, not a particular diagnosis in and of itself. *See, e.g., Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998) ("It is not enough to show that [the claimant] had received a diagnosis of fibromyalgia with a date of onset prior to the expiration of the insured period, since fibromyalgia is not always (indeed, not usually) disabling").

Though the ALJ erred at Step Two, that error was rendered harmless at Step Four where he considered Dusty's alleged symptoms and limitations stemming from her impairments, albeit without explicitly identifying fibromyalgia as a MDI. Again, as the Court analyzed above in III.B, the ALJ's consideration of the record evidence at Step Four was articulated clearly enough to enable the Court to "assess the validity of the ALJ's ultimate findings and afford [Dusty] meaningful judicial review." *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). The ALJ formulated a RFC that was responsive to Dusty's complaints of limitation while also reflective of substantial medical and other evidence of record. Remand is not warranted.

## IV

For the foregoing reasons, the Court DENIES the Plaintiff's request to reverse and remand the unfavorable decision of the Defendant. The Clerk of Court is directed to enter judgment as follows: "IT IS ORDERED AND ADJUDGED that the decision of the Defendant, Martin O'Malley, Commissioner of Social Security, denying benefits to the Plaintiff, Dusty J., is AFFIRMED." This matter is now terminated.

*It is so ordered.*

Entered on August 19, 2024.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE